**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-50937

_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOSE LUIS ROBLES-VERTIZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
September 16, 1998

Before KING, SMITH, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Jose Robles-Vertiz challenges his conviction of illegal transportation of aliens and for aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and 18 U.S.C. § 2.  We affirm.


I.

Efrain Trejo-Mendieta sought to smuggle his wife and her friend into the United States from Mexico.  He approached Robles-Vertiz for help in this venture and secured his agreement.  The two

men traveled to Mexico and hired a guide with expertise in border crossings. Trejo, his wife, her friend, and the guide waded across the Rio Grande River to Texas, where they were met by Robles-Vertiz. The wife's friend, an illegal alien named Anna Guerrero, accepted a ride in Robles-Vertiz's car. Trejo drove his wife in a separate car.

Robles-Vertiz and Trejo were pulled over and arrested by Border Patrol agents near Bracketville. Robles-Vertiz directed Guerrero to identify herself to investigators as "Monica Martinez-Salazar," which she did. As Guerrero had no identifying documents on her at the time of arrest, the initial criminal complaint against Robles-Vertiz named the smuggled alien as Monica Martinez-Salazar. The single-count indictment, however, charged the following:

> That on or about November 28, 1996, in the Western District of Texas, Defendants, JOSE LUIS Robles-Vertiz-VERTIZ, AND EFRAIN TREJO-MENDIETA, aided and abetted by each other, did knowingly and in reckless disregard of the fact that the hereinafter named alien entered and remained in the United States in violation of law, willfully and unlawfully transported and moved, and attempted to transport and move, in furtherance of such violation of law, a certain alien, to-wit: MONICA RAMIREZ-SANCHEZ, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii), and Title 18, United States Code, Section 2.

Trejo pleaded guilty and testified against Robles-Vertiz. No evidence was introduced concerning anyone named "Monica Ramirez-Sanchez"; the evidence showed that Robles-Vertiz had transported an alien named Anna Guerrero, also known as Monica Martinez-Salazar.

2

II.

Robles-Vertiz points out that the indictment charged him with transporting an alien named Monica Ramirez-Sanchez, whereas the evidence at trial showed he had transported a woman named Anna Guerrero, also known as Monica Martinez-Salazar. He asserts that this discrepancy amounts to a constructive amendment of the indictment.

A.

Only the grand jury can broaden an indictment through amendment. *United States v. Salvatore*, 110 F.3d 1131, 1145 (5th Cir. 1997). A constructive amendment occurs when the government changes its theory during trial so as to urge the jury to convict on a basis broader than that charged in the indictment, or when the government is allowed to prove "an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment." *Id*. (quoting *United States v. Slovacek*, 867 F.2d 842, 847 (5th Cir. 1989)). In *United States v. Young*, 730 F.2d 221, 223 (5th Cir. 1984), we explained that "[t]he accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged."

3

If, however, the indictment "contained an accurate description of the crime, and that crime was prosecuted at trial, there is no constructive amendment." *United States v. Mikolajczyk*, 137 F.3d 237, 244 (5th Cir. 1998), *petition for cert. filed* (Aug. 4, 1998) (No. 98-5534), *and petition for cert. filed* (Aug. 4, 1998) (No. 98-5559), *and petition for cert. filed* (Aug. 4, 1998) (No. 98-5560). We still must determine whether the variance, if any, was harmless. *See United States v. Puig-Infante*, 19 F.3d 929, 936 (5th Cir. 1994). In this inquiry, "our concern is that the indictment notifies a defendant adequately to permit him to prepare his defense, and does not leave the defendant vulnerable to a later prosecution because of failure to define the offense with particularity." *Id*. (internal quotation omitted).

B.

In *Stirone v. United States*, 361 U.S. 212 (1960), the Court found a constructive amendment when the indictment alleged that the defendant had unlawfully interfered with the importation of sand, but the court instructed the jury that it could base a conviction on interference with the exportation of steel. The Court explained that "when only one particular kind of commerce is charged to have been burdened a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that

4

commerce of one kind or another had been burdened." *Id*. at 218. In deciding that this modification constituted a constructive amendment, the Court reasoned that the grand jury did not indict the defendant for the conduct that may have formed the basis for his conviction; it refused to permit him to be "convicted on a charge the grand jury never made against him." *Id*. at 219.

We have found constructive amendments in cases where the government alleges one theory of the case in the indictment, but argues another at trial. For example, in *United States v. Salinas*, 654 F.2d 319 (5th Cir. Unit A Aug. 1981), *overruled on other grounds by United States v. Adamson*, 700 F.2d 953 (5th Cir. 1983) (en banc), we held that an indictment was constructively amended when it alleged that the defendant had aided and abetted theft by a certain named bank officer, but the evidence showed that he aided and abetted theft by a different bank officerSSa person not named in the indictment. We explained that

> the mistake in the particular name of the officer involved is not like a variance in a date or place. The *appellant* was not formally charged with theft. The indictment said in effect that [the named officer] stole and that the appellant helped. Once it is shown that the named principal did not steal, it begins to look like the appellant was convicted of a crime different from that of which he was accused.

*Id*. at 324-25 (emphasis in original).

Similarly, in *United States v. Adams*, 778 F.2d 1117 (5th Cir. 1985), we found a constructive amendment when the indictment charged the defendant with purchasing a handgun by using a driver's

5

license with a false name, but the jury was permitted to convict on the basis of using a driver's license with a false residence. *Salinas* and *Adams* illustrate that the government may not obtain an indictment alleging certain material elements or facts of the crime, then seek a conviction on the basis of a different set of elements or facts.

C.

The question is whether the alien's name was an "essential element" of Robles-Vertiz's offense. Robles-Vertiz says it was: He likens this case to *Salinas*, arguing that he too was convicted of a crime (transporting Anna Guerrero) different from that of which he was accused (transporting Monica Ramirez-Sanchez). He also claims that because the government must prove the smugglee's alien status under 8 U.S.C. § 1324(a)(1)(A)(ii), it follows that the amendment modified an essential element of the charged offense.

The government counters by arguing that the alien's name was surplusage: Because the indictment could have charged Robles-Vertiz with transporting an *unnamed* alien, the alien's name could not possibly be an essential element of the offense.[1]

We agree that the indictment was not constructively amended. While this case is similar to *Salinas* in that both indictments

_____

[1] *See United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992) (stating that "when an indictment alleges non-essential facts, the government need not prove them in order to sustain a conviction").

misnamed a key party, here the error was merely one of transcription.  Indeed, there is a common first name, and the surnames evince a certain phonetic congruity.  The government was not, as in *Salinas*, arguing a theory different from what it had alleged in the indictment.  The change in names did not reflect a change in the alleged conduct.

The error in the indictment was analogous to a spelling error: The government intended to name Anna Guerrero, also known as Monica Martinez-Salazar, but through a mistake that could have caused Robles-Vertiz no confusion, nor prejudiced him in any way, the government erroneously entered her name as Monica Ramirez-Sanchez.[2]

Were "Monica Ramirez-Sanchez" a person involved in Robles-Vertiz's smuggling scheme, this would be a different case.  That is because the indictment would have been *broadened*SSthe prosecution could have secured a conviction by proving the smuggling of *either* woman.  In that circumstance, the government would be prosecuting a theory that it had not presented to the grand jury.

The key inquiry is whether the defendant was convicted of the same conduct for which he was indicted.  *See, e.g., Salinas*, 654 F.2d at 324-25.  This test is met here.  There is no suggestion that the government's mistake resulted from anything but cacography or carelessness in transcription.  Nor is there indication that the

---

[2] *See Mikolajczyk*, 137 F.3d at 243 (finding no constructive amendment when "the indictment contained a drafting error that confused and prejudiced no one").

7

discrepancy enabled the government to obtain an indictment for conduct different from what it proved.

The error constituted nothing more than a harmless, immaterial variance that did nothing to prejudice Robles-Vertiz's substantial rights. As we explained in *Robinson*, 974 F.2d at 578, a variance is material when it prejudices substantial rights, either by surprising the defendant at trial or by exposing him to risk of double jeopardy. Robles-Vertiz could not have been confused as to the events that formed the basis for the indictment, nor has he shown how the error hampered him in preparing a defense. He was aware of which person the government intended to identify in the indictment, and of the precise set of facts that formed the basis of the charge.

III.

Robles-Vertiz contends that the district court wrongly admitted evidence of his prior conviction for aiding and abetting the illegal entry of two aliens. We review evidentiary rulings for abuse of discretion. *Snyder v. Trepagnier*, 142 F.3d 791, 801 (5th Cir. 1998).

Border Patrol agent Martinez testified that, in reviewing Robles-Vertiz's alien registration file, he uncovered the criminal complaint and judgment of conviction. Neither document was entered into evidence. Robles-Vertiz deploys three arguments in

8

challenging the admission of Martinez's testimony: He claims the testimony was inadmissible hearsay, irrelevant, and unfairly prejudicial. None of these arguments has merit.

## A.

Robles-Vertiz argues that the testimony was inadmissible hearsay. While acknowledging that judgments of previous convictions are admissible under FED. R. EVID. 803(22),[3] he reasons that the exception encompasses only the judgment itself and does not allow the type of testimony hereSSa law enforcement agent's testifying to the *existence* of the judgment in the defendant's file. This, Robles-Vertiz says, is hearsay.

Even if we agree that the agent's testimony does not fall within this exception, we cannot see how substantial rights were harmed. Specifically, FED. R. EVID. 103 provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." This rule "is not susceptible to mechanical analysis," and courts must proceed on a case-by-case basis. *Munn v. Algee*, 924 F.2d 568, 573 (5th Cir. 1991).

---

[3] The Rule permits admission of:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment ....

FED. R. EVID. 803(22).

The rule against hearsay "seeks to eliminate the danger that evidence will lack reliability because faults in the perception, memory, or narration of the declarant will not be exposed." 5 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 802.02[3] (2d ed. 1998). Robles-Vertiz does not challenge the accuracy of the agent's testimony that he was, in fact, previously convicted of aiding and abetting the illegal entry of two aliens. Robles-Vertiz's argument is *not* that the testimony was unreliable, but that it was irrelevant and prejudicial. Accordingly, we cannot see how the admission of this evidenceSSto the extent it constituted hearsaySScould amount to reversible error.

## B.

Robles-Vertiz says Martinez's testimony should have been excluded as irrelevant. The government relies on FED. R. EVID. 404(b), which allows admission of other crimes evidence in order to show the absence of mistake or accident. Robles-Vertiz's defense was that he believed Guerrero to be a United States citizen; the evidence of his prior conviction for smuggling aliens was therefore relevant and admissible to undercut his defense that he made an honest, good-faith mistake. The testimony spoke directly to Robles-Vertiz's knowledge and state of mind when he chose to transport Guerrero. The district court properly admitted it.

10

C.

Robles-Vertiz avers that the evidence was unfairly prejudicial and should have been excluded under FED. R. EVID. 403. As we have explained, evidence of Robles-Vertiz's prior conviction illustrated his mental state in transporting Guerrero; it was probative in that it suggested the absence of mistake. Accordingly, the probative value exceeded any possible prejudicial effect and that the district court did not abuse its discretion in admitting it.

IV.

Robles-Vertiz challenges the denial of his motion for mistrial following what he says were improper and prejudicial remarks by the prosecutor during closing argument. The denial of such a motion is reviewed for abuse of discretion. *United States v. Thomas*, 120 F.3d 564, 573-74 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 721 (1998).

A.

Robles-Vertiz targets the following exchange, which occurred after the prosecutor ridiculed Robles-Vertiz's claim that Guerrero had duped him with a false birth certificate indicating U.S. citizenshipSSa birth certificate that was not found at the scene, nor has ever materialized, despite Robles-Vertiz's claim that Guerrero deposited the document in his glove compartment:

UNITED STATES: Ask yourselves, what happened to that birth certificate he was talking about where he was duped.  Ask yourselves that, and demand that he answer it.  Because quite frankly that's important becauseSS

DEFENSE: Counsel's attempting to shift the burden of proof, Your Honor.  It's improper.

THE COURT: Sustained.

UNITED STATES: Ask yourself where the evidence is.  Is the evidence with thoseSS

DEFENSE: Objection.  Same objection.  He's attempting to shift the burden of proof, Your Honor.

THE COURT: Overruled.

Robles-Vertiz echoes these objections on appeal, complaining that the prosecutor wrongly shifted the burden of proof to him and impermissibly commented on his failure to testify.

The government cannot shift the burden of proof, *United States v. Bermea*, 30 F.3d 1539, 1563 (5th Cir. 1994), nor may a prosecutor comment on the defendant's failure to take the stand, *United States v. Johnston*, 127 F.3d 380, 396 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1174 (1998).  It is not error, however, "to comment on the defendant's failure to produce evidence on a phase of the defense upon which he seeks to rely."  *United States v. Mackay*, 33 F.3d 489, 496 (5th Cir. 1994).

That is what happened here.  Even if we agree that the prosecutor's first remark somehow suggested Robles-Vertiz bore the burden of proofSSa strained interpretation, given that the comment referred to the defense's failure to prove its own theory of the

12

case§§the court promptly sustained the defense's objection. As we noted in *United States v. Sylvester*, 143 F.3d 923, 930 (5th Cir. 1998), reversal is warranted only when the improper remark had a "clear effect" on the jury§§hardly the case here.

The prosecutor's second remark was similarly innocuous. It simply highlighted the defense's failure to introduce evidence supporting Robles-Vertiz's claim of an honest mistake. While a prosecutor's remarks constitute impermissible commentary on a defendant's right not to testify if "the prosecutor's manifest intent was to comment on the defendant's silence or if the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence," *Johnston*, 127 F.3d at 396, no juror would have "naturally and necessarily" construed these remarks in that way in this case.

B.

Robles-Vertiz claims that the prosecutor improperly suggested that Robles-Vertiz had a reputation as a smuggler of aliens. In closing argument, the prosecutor stated that "[w]e know that [Robles-Vertiz's] reputation in the community is that of an alien§§," at which point he was interrupted by the defense. The court sustained the defense's objection on the ground that the prosecutor was arguing evidence outside the record. The prosecutor then replied, in front of the jury, that his "recollection was that

13

Mr. Trejo said that he knew his reputation in the community as someone who could help get people in the country and transport." The court denied the defense's motion for a mistrial and instructed the jury that it should focus solely on the evidence presented by the witnesses.

Robles-Vertiz argues that he was prejudiced by these remarks and that his motion for a mistrial was wrongly denied. In determining whether a prosecutor's remarks constitute reversible error, we consider the magnitude of the prejudicial effect of the statements, the efficacy of any cautionary instruction, and the strength of the evidence of guilt. *United States v. Rodriguez*, 43 F.3d 117, 124 (5th Cir. 1995) (internal citation omitted).

First, the magnitude of the prejudice, if any, was slight. The prosecutor's stray remark was met with an objection, which was sustained. Second, the court immediately issued a cautionary instruction directing the jury to confine its consideration to witness testimony. Third, there was strong evidence of guilt. Robles-Vertiz was caught transporting an illegal alien; his dubious defenseSSthat he was hoodwinked by GuerreroSSwas undercut by his failure to produce the elusive birth certificate and by his prior conviction for smuggling aliens. Accordingly, the remarks were harmless, and the court did not abuse its discretion in denying a mistrial.

AFFIRMED.

14

ROBERT M. PARKER, Circuit Judge, dissenting:

Jose Robles-Vertiz was convicted of illegal transportation of aliens. In order to obtain that conviction, the district court allowed the government to introduce into evidence Robles-Vertiz's prior 1996 conviction for illegal transportation of aliens. A violation of Federal Rule of Evidence 404(b) could not be more blatant. Rule 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

The majority too easily accepts the government's assertion that the evidence was admissible to show the absence of mistake or accident as allowed under Rule 404(b). According to the government the prior conviction was relevant and admissible to undercut Robles-Vertiz's defense that he believed Guerrero was a United States citizen and thus spoke directly to intent. I fail to see how a prior conviction for illegally transporting aliens has any probative value as to whether Robles-Vertiz believed Guerrero was a United States citizen. Surely there were other ways to attack this defense, for example, through Trejo's testimony. *See United States v. Baldarrama*, 566 F.2d 560, 568 (5th Cir. 1978) (holding that the government must also show a reasonable necessity for the

16

use of a prior conviction because prior crime evidence has a significant potential for prejudicial effect). Evidence of the prior conviction showed conformity--nothing more. Admission of such evidence is not allowed under Rule 404(b).

Additionally, there could not be a more prejudicial piece of evidence introduced at trial than the prior conviction for the same offense for which Robles-Vertiz was charged. The majority glosses over the prejudicial impact of this evidence by concluding that because the evidence is probative with respect to absence of mistake, it exceeds any possible prejudicial effect. I cannot agree. Accordingly, I respectfully dissent.

17