**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-11010
_____


**UNITED STATES OF AMERICA**

**Plaintiff-Appellee,**

**VERSUS**

**PORFIRIO ARMANDO NUÑEZ,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

July 1, 1999


Before SMITH, DeMOSS, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Porfirio Nuñez appeals his conviction of, and sentence for, resisting arrest by a federal officer in violation of 18 U.S.C. § 111. He attacks (1) the admission of character evidence in favor of the arresting officer; (2) the inclusion of an alternative ground for conviction in his jury charge; (3) the application of a thirty-month sentence to his conviction; and (4) the enhancement of his sentence. Concluding that the district court erred in allowing the jury to convict Nuñez of a crime for which he had not been indicted, thereby violating his Fifth Amendment grand jury rights, we reverse conviction and sentence.

I.

A.

On January 30, 1998, border patrol agents raided a construction site in a housing subdivision. Seven of the ten workers fled the site, and the agents quickly apprehended six of them. The seventh was seen fleeing to the north.

Agent Stephen Thorne gave chase, and a few minutes later the other agents heard shots fired. They found Nuñez lying face down, bleeding, at the bottom of a hill, and Thorne sitting next to him.

Thorne testified that he began searching the area to the north of the site and found a man, later identified as Nuñez, hiding in a thick brushy area. In Spanish, he told the man to stop running and to stop moving. Nuñez resisted being handcuffed by flailing his arms in a violent motion. After hitting Nuñez with his fist and throwing him to the ground, Thorne ordered him not to move and called for help.

Nuñez then lunged at Thorne and tried to grab his semi-automatic pistol. After a brief struggle, Nuñez managed to pull the weapon from Thorne's holster with his left arm and struck him on the left side of the face. Thorne then bit Nuñez's upper left bicep and grabbed his left arm to try to get the weapon away from him. Thorne turned the weapon toward Nunez and discharged three rounds. Thorne felt his life was in danger and believed Nuñez was going to shoot him.

Thorne called again for backup while pointing the gun toward Nuñez. By this point, Nunez had moved away from Thorne and had fallen down a nearby embankment, leaving a trail of blood. David Johnson, the agent in charge, was one of the first to arrive at the scene and testified that Thorne told him that Nuñez "just came at me" and "tried to take my gun away." Thorne suffered lacerations on the left side of his face and his hands and legs, caused by falling into some vines, and a bruise on his left cheek caused by a blow from Nuñez.

Nuñez offered uncontested evidence that he was shot from behind. The surgeon who operated on him testified that the entry wound was on the back of his upper right thigh, and the bullet passed through a major vein and femoral artery of Nuñez's thigh and caused severe bleeding.

The trail of blood began some twelve feet from the area where Thorne says the struggle occurred. Therefore, Nuñez disputes Thorne's claim that the gun was fired during the struggle and argues that the evidence indicates that Thorne shot Nuñez in the back of his leg as he was running away.

Nuñez also points out that there was no trace of gunshot residue on his hands and pants. According to Nuñez's expert witness, this indicates that the weapon was more than twelve inches away when fired. This evidence further disputes Thorne's claim that the gun was fired during the struggle. The government's expert witness disagreed, however, testifying that the gunshot residue could have been masked by Nuñez's blood and that the absence of residue is not conclusive on the question of the distance between Nuñez and the gun at the time of the discharge.

Finally, Nuñez contests Thorne's claim that Nuñez struck Thorne. At his first examination, Thorne told his treating physician that his injuries had been caused by "rolling in the vines." It was only during the second examination that he told the doctor that he had been hit in the face. Similarly, Nuñez points out that in his first day of testimony, Thorne did not mention being hit by Nuñez. On the second day, Thorne testified that Nuñez had hit him and explained that he had simply forgotten about this fact on the first day.

Nuñez therefore offers this alternate set of facts: After he had problems handcuffing Nuñez, Thorne became angry and hit Nuñez in the face with the handcuffs. Defending himself, Nuñez ran off, and Thorne shot Nuñez from behind. Thorne then chased Nuñez but fell down the hill and rolled into the vines, losing his gun and magazines.

### B.

A grand jury indicted Nuñez on a single count, charging that, in violation of 18 U.S.C. § 111, he "knowingly and by means and use of a dangerous weapon, that is, a fully loaded .40 caliber Beretta semi-automatic pistol, did forcibly resist, oppose, impede, intimidate, and interfere with" a border patrol Agent, engaged in his official duties. At trial, however, the jury received two instructions. The first told the jury that it could convict if it found Nuñez guilty of resisting arrest by means and use of a dangerous weapon, as alleged in the indictment. The second instructed the jury that it could also convict if it found that Nuñez was guilty of "forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal officer," and made no mention of the use of a dangerous weapon.

The jury acquitted Nuñez in regard to the first instruction, finding that he did not, beyond a reasonable doubt, resist arrest by means of a dangerous weapon. But the jury did convict Nuñez on the basis of the second instruction, apparently finding that he *did* forcibly resist in some way, though not by means of a dangerous weapon.

Nuñez had objected to the inclusion of the second instruction, and after the verdict, he moved for a judgment of acquittal, claiming that the jury should not have been permitted to convict him under a theory not charged in the indictment. He also moved for a new trial based on errors in the admission of Thorne's testimony. The court overruled both motions.

### II.

Though the grand jury indicted Nuñez for "knowingly and by means and use of a dangerous weapon, that is, a fully loaded .40 caliber Beretta semi-automatic," assaulting a federal officer, the trial jury was instructed it also could convict Nuñez of forcibly assaulting a federal officer without the use of a dangerous weapon. Because the jury acquitted Nuñez of the "resisting arrest by means and use of a dangerous weapon" charge§§the only charge specifically alleged in his indictment§§Nuñez now claims that his remaining conviction should be vacated because the court impermissibly broadened the theory of the indictment in violation of his Fifth Amendment right to a grand jury indictment.[1] We agree.[2]

### A.

"Ever since *Ex Parte Bain* was decided in 1887, it has been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Stirone*, 361 U.S. 212, 215-16 (1960) (internal citation omitted). Therefore, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Id.* We have consistently followed *Stirone* and have reversed convictions where "the jury might have convicted [a] defendant" on new elements to the offense not charged by the grand jury. *See United States v. Bizzard*, 615 F.2d 1080, 1082 (5th Cir. 1980).

This court has further held that "a constructive amendment of the indictment is a reversible error per se if there has been a modification at trial of the elements of the crime charged." *See United States v. Salinas*, 601 F.2d 1279, 1290 (5th Cir. 1979). We also, however, have "distinguish[ed] between an expansive reading of the indictment that requires reversal and a variance that is a

---

[1] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." U.S. CONST. amend. V.

[2] Because we vacate Nuñez's conviction on Fifth Amendment grounds, we do not reach his challenge to the admissibility of Thorne's character evidence or to the length of his sentence.

3

harmless error." *See United States v. Ylda*, 653 F.2d 912, 913 (5th Cir. Unit A Aug. 1981).[3] "The misconstruction of an indictment is reversible error if it is possible that the defendant was tried for a crime other than that alleged in the indictment." *Id.* at 914. "If, on the other hand, it is clear that this could not have been the case, the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in the trial that mar its perfection but do not prejudice the defendant." *Id.*

Therefore, while we remain obedient to *Stirone*'s commands to scrutinize any difference between an indictment and a jury instruction, we will reverse only if that difference allows the defendant to be convicted of a separate crime from the one for which he was indicted. Otherwise, he will have to show how the variance in the language between the jury charge and the indictment so severely prejudiced his defense that it requires reversal under harmless error review.[4]

B.

Nuñez claims that the difference between his indictment and jury instructions is so significant that it allowed the jury to convict him of a crime for which he was not indicted and does not constitute a mere variance subject to harmless error review. Instead, he argues that his case deserves the same strict scrutiny applied in *Stirone*. There, a defendant was indicted for obstructing the interstate movement of sand in violation of the Hobbs Act, 18 U.S.C. § 1951. The district court allowed a conviction based on a factual finding that the defendant had obstructed a shipment of steel in interstate commerce.

The Court reversed and held that the variation between the jury instruction and the indictment "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by the grand jury." *Stirone,* 361 U.S. at 217. Moreover, even though the statute permitted a conviction on a general indictment that did not specify the type of burden on interstate commerce, the Court held that the conviction must rest on the charge specified in the indictment. *Id.* Following *Stirone*, Nuñez argues that the grand jury limited the government to proving that he resisted "by means of" Thorne's firearm, despite the fact that a broader indictment would have been permissible under the statute.

---

[3] *See*, *e.g.*, *United States v. Trice*, 823 F.2d 80, 91 (5th Cir. 1987) (holding that reversal is not required if there is no possibility instruction allowed jury to convict for offense different from that charged in indictment).

[4] *See* 24 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 607.06[1], at 607-41 n.15 (3d ed. 1997) stating that a variance is reviewed under harmless error standard and is not fatal unless it infringes substantial rights).

The government distinguishes *Stirone* by reminding us that a constructive amendment does not occur in all variances between an indictment and jury instruction, but only "when the conviction rested upon a set of facts distinctly different from that set forth in the indictment." *United States v. Young*, 730 F.2d 221, 223 (5th Cir. 1984). In *Stirone*, the defendant was convicted of one act (obstructing steel shipments) completely different from the other act alleged in his indictment (obstructing sand shipments). But in *Young,* we affirmed a conviction even though the indictment charged the defendant with receiving a weapon in interstate commerce. The jury actually convicted him of receiving a weapon in foreign commerce. Therefore, the government concludes that because the "factual basis for the indictment is identical to that for a conviction . . . . it is *not* possible that the defendant has been convicted for an offense not charged in the indictment." *See Young*, 730 F.2d at 224.

Thus, we must decide whether the difference between resisting by means of a firearm and resisting without using a firearm is "factually distinct," as *Stirone*, or constitutes a single "factual basis," as in *Young.* There is a substantial factual difference between resisting arrest using a firearm and doing so without using a firearm. While both charges stem from the same incident, the difference between using and not using a firearm is great enough that it allowed Nuñez to be convicted of a crime for which he had not been indicted.

Simply because the facts leading to the conviction arose out of the same incident does not mean that the defendant was not impermissibly convicted of a separate crime. In *United States v. Salinas*, 654 F.2d 319, 324 (5th Cir. Unit A Aug. 1981), we reversed a conviction even though the defendant had been convicted for the same act for which he had been indicted. Still, because the jury charge allowed a conviction for committing that act in a manner different from that alleged in the indictment, we found a constructive amendment.

In the *Salinas* indictment, the defendant was charged with aiding and abetting a bank officer in misappropriating bank funds. During the trial, the bank officer was cleared of any connection to the defendant or to the misappropriation. But the court instructed the jury that it could convict for aiding and abetting *any* bank officer. We reversed. *See Salinas*, 654 F.2d at 324.

Nuñez, like the *Salinas* defendant, was indicted on very specific charge (assaulting an officer by means of a firearm) and then convicted under a less specific offense (assaulting an officer) that arose out of the same factual incident. The jury then acquitted him of the specific crime for which he had been indicted. Just as the *Salinas* district court gave the jury instructions that allowed them to convict for *any* type of fraud, the instructions in this case allowed the jury to convict Nuñez for almost any kind of assault. This is a different and separate offense that was not charged in the indictment.

Thus, though the conviction arose from the same factual incident, the difference between the specific details of the indictment and the general jury instruction is too great to survive the requirements of the Fifth Amendment.[5] Nuñez was convicted for a crime, resisting arrest by *any* means, for which he was not indicted.[6]

The government further contends that resisting arrest by any means is a lesser-included offense within the meaning of *United*

---

[5] *Accord United States v. Doucet*, 994 F.2d 169, 172-73 (5th Cir. 1993) (holding that constructive amendment of indictment occurred when defendant was indicted for possession of unregistered *assembled* machine guns, but prosecutor defined machine gun at trial and in jury instruction to include possession of *unassembled* machine gun parts).

[6] The government cites *United States v. Robles-Vertiz*, 155 F.3d 725 (5th Cir. 1998), but the variance in that case is far less significant than the one involved here. *Robles-Vertiz* involved a drafting error in which the government used the wrong name to indict the defendant.

5

*States v. Miller*, 471 U.S. 130 (1985), in which the Court upheld a conviction based on a theory that was more narrow than the one set forth in the indictment. "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Miller*, 471 U.S. at 136.

But Nuñez persuasively responds that *Miller* endorses only variances that *narrow* the indictment. In *Miller*, the defendant was indicted for insurance fraud for (1) consenting to a burglary and (2) lying to an insurer about the value of his loss. At trial, however, the proof showed only that *Miller* had lied to the insurer and did not support his involvement in the burglary. The court instructed the jury it could convict on the basis of the lying alone.

The Court found no constructive amendment, however, because the indictment plainly set out the offense (lying to the insurer) for which the defendant eventually was convicted. The fact that the indictment alleged other offenses "independent of and unnecessary to the offense on which a conviction ultimately rests" is not fatal to the government and may be "treated as surplusage." *Miller*, 471 U.S. at 137. Therefore, the Court refused to give Miller relief: "His complaint is not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than necessary." *Id.* at 140.

Nuñez rightly argues that the indictment failed to charge the offense for which he was convicted. The jury instruction, without specific reference to how he resisted arrest, impermissibly *broadens* the indictment to include all sorts of resistance. Unlike the *Miller* indictment, Nuñez's indictment did not allege two different offenses, one of which was rejected by the trial jury. Rather, Nuñez's single-count indictment alleged a single offense: "resisting arrest by means of a firearm." This is a specific and narrow accusation, and the later jury instruction

allowing conviction for "resisting arrest" is far more general and broad.

It is this very type of "broadening" that the *Miller* court refused to endorse. In contrasting its holding to that in *Stirone*, the *Miller* court emphasized that in *Stirone,* the "trial evidence had 'amended' the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment." 471 U.S. at 138.

Finally, the government suggests that § 111(b), the provision allowing extra punishment for resisting with a firearm, is merely a penalty provision. Therefore, it asserts that the dangerous weapon allegation is not an essential element of the indictment and does not restrict the government's theory of conviction. Nuñez is correct, however, in stating that *Jones v. United States*, 119 S. Ct. 1215 (1999), forecloses this reading of federal criminal statutes except where statutory sections specifically increase punishments for prior crimes. *See id.* at 1226. *Jones* teaches us to avoid encroaching on a defendant's Fifth Amendment rights by construing statutes setting out separate punishments as creating separate, independent criminal offenses rather than a single criminal offense with different punishments. *See id.*

In *Jones*, the Court interpreted 18 U.S.C. § 2119, which imposed different punishments depending on the severity of the injuries suffered by victims of a car-jacking, as creating three separate offenses rather than a single offense with three punishments.[7] Likewise, we read 18 U.S.C. § 111 as creating three separate offenses, *to-wit*, resistance by means of (1) simple assault; (2) more serious assaults but not involving a dangerous weapon; and (3) assault with a dangerous

---

[7] Title 18 U.S.C. § 2119 provides that when a person takes a motor vehicle by force and while possessing a firearm, the punishments shall be (1) not more than 15 years if the victim suffered no serious bodily injury; (2) not more than 25 years if the victim suffers serious bodily injury; and (3) not more than life imprisonment if the victim dies as a result of the car-jacking.

6

weapon. The government chose to indict Nuñez for resistance by means of assault with a dangerous weapon, and it is not permitted to shift its theory of the case to a separate, independent criminal offense without obtaining a separate indictment. *Jones* confirms our view that allowing the jury to convict Nuñez of forcibly resisting without the use of a dangerous weapon is a conviction "of an offense not charged in the indictment." *Stirone*, 361 U.S. at 213.

The conviction and sentence are REVERSED.