**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-40670**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**VICTOR GONZALEZ,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(M-98-CR-28)**
_____

**August 18, 1999**

Before SMITH, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[1]

Victor Gonzalez appeals on three principal bases his 18 U.S.C. § 666 bribery conviction for referring prisoners to a bail bondsman; but, because of his failure to properly preserve the points in district court, two of those bases are subject to very limited review. We **AFFIRM.**

I.

This case concerns prisoner-referral payments by bail bondsman Homero Longoria to several officials in Starr County, Texas,

----

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

including Gonzalez, a jail administrator. Following monitoring of Longoria's office telephone, including several calls with Gonzalez, Longoria cooperated with the FBI, from mid-1997 to early 1998, by wearing a recording device and allowing a concealed video camera in his office. He was told *not* to alter his bribe-payment behavior, and to report it to the FBI.

In four incidents recorded by video and audio, Longoria appeared to pay Gonzalez for prisoner referrals. As discussed *infra*, although indicted for payments received for each of the four incidents, Gonzalez was convicted only on the first two described below (Garcia and Salinas incidents).

In late November 1997, Longoria paid Gonzalez $300, stating, with Gonzalez's evident agreement, that it was for prisoner Daniel Garcia, whom Longoria and Gonzalez had discussed earlier that day. And, late that December, Gonzalez explained to Longoria that a prisoner known as "El Gallo" was Eugenio Salinas and indicated he (Gonzalez) could approve his bond. (In fact, the approval was beyond his authority.) In early January 1998, Longoria paid Gonzalez $300 and told him, again with Gonzalez's evident agreement, that it was for approving (with the sheriff) Salinas' bond. In addition, Gonzalez met with a prisoner in early November 1997 prior to receiving a payment from Longoria, and spoke to Longoria in early December 1997 about three other prisoners prior to another payment.

- 2 -

Gonzalez was indicted in January 1998 on one count of conspiracy to commit bribery and four substantive bribery counts, in violation of 18 U.S.C. § 666. He testified that Longoria's payments simply repaid money he had loaned Longoria. A jury convicted Gonzalez on the Garcia and Salinas bribery counts, but acquitted him on the conspiracy count and the other two bribery counts.

Gonzalez's new trial motion, premised on the court's refusal to give an entrapment instruction, was denied. Gonzalez was sentenced, *inter alia*, to one year and one day in prison.

## II.

### A.

Among other things, 18 U.S.C. § 666(a)(1)(B) prohibits agents of certain organizations (per § 666(b), those receiving over $10,000 of federal funds within a year) from corruptly accepting anything of value intending to be influenced or rewarded in connection with a transaction involving over $5,000 in value. Gonzalez makes several challenges to his indictment and the sufficiency of the evidence.

Because he did not properly contest the indictment in district court and did not move for acquittal at the appropriate time (Gonzalez so moved at the close of the Government's case-in-chief, but not at the close of all the evidence or post-verdict), our review is very narrow. Concerning the indictment, because Gonzalez

- 3 -

claims no prejudice, we will reverse only if, read with "maximum liberality", the indictment is "so defective that under any reasonable construction, it fails to charge the offense for which the defendant is convicted". *United States v. Fitzgerald*, 89 F.3d 218, 221 (5th Cir. 1996). Likewise, for evidentiary sufficiency, we determine only whether the conviction resulted in a manifest miscarriage of justice. *E.g., United States v. Resio-Trejo*, 45 F.3d 907, 910 n.6 (5th Cir. 1995).

### 1.

Gonzalez contends that referring prisoners to bail bondsmen for money is *not* illegal in his county; and that, as a result, he did not act "corruptly" under § 666. He reasons that his conduct is legal because TEX. CIV. STAT. art. 2372p-3(15), which criminalizes referral of bond business in counties where bondsmen must be licensed, does not include low-population counties without bail bond boards, such as his.

Gonzalez offers no basis why his conduct, even assuming it was permitted under art. 2372p-3(15), does not nevertheless violate the general Texas bribery statute, TEX. PENAL CODE § 36.02(a)(1) (criminalizing, *inter alia*, acceptance of benefit in exchange for decision as public servant). In any event, for purposes of our limited review, Gonzalez acted "corruptly"; the indictment and evidence were sufficient in this regard.

### 2.

Because the Starr County Sheriff's Department, Gonzalez's employer, receives money (far more than the statutory $10,000 annual requirement) to house federal prisoners, it meets, certainly for purposes of our limited review, § 666(b)'s requirement of a connection between federal funds and bribery. As the Department's agent, Gonzalez therefore fell within § 666(a)(1)(B).

Gonzalez, however, urges requiring a closer relationship between funding and bribery than that on the face of the statute. He maintains that corrupt referral of *state prisoners*, even when housed in a facility built with, and otherwise receiving, federal funds, lies outside § 666, claiming that the statute extends only to *activities* receiving federal funds, and *not* to all federally-funded *organizations*.

Where bribery involves the requisite sort of employee of an organization receiving sufficient federal funds, "the direct involvement of federal funds in a transaction is *not* an essential element of bribery under section 666(b)", **United States v. Westmoreland**, 841 F.2d 572, 578 (5th Cir. 1988) (emphasis added); the statute's language is "plain and unambiguous" and "eliminate[s] the need to trace the flow of federal monies", *id.* at 576, 577. Gonzalez acknowledges **Westmoreland**, but seeks a requirement somewhere between that on the face of the statute (that bribery involve an agent of an organization receiving requisite federal funds) and the "direct connection" rejected in **Westmoreland**.

- 5 -

However, to require a connection between bribery and federally-funded *activities* beyond a connection to federal-fund-receiving *organizations* would require the very fund-tracing **Westmoreland** disavows. And, certainly for purposes of our very narrow review, **Westmoreland** also sufficiently answers any question left open by **United States v. Salinas,** 118 S.Ct 469, 474 (1998) ("whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds" less stringent than that satisfied when bribery involves *federal prisoners* for whom funding is made).[2]

3.

Gonzalez highlights an evident typographical error in his indictment, which describes his substantive bribery counts under a general "Counts Two Through Five" heading, but then refers to "the [prisoners] listed in counts two through three". The indictment then lists *four* individual prisoners and dates, numbered 2 through 5, followed by the description "All in violation of [18 U.S.C. §] 666(a)(1)(B)".

In context, it is obvious that counts 4 and 5 name prisoners whom Gonzalez referred for money at particular times, and that "two

---

[2]Gonzalez asserts in passing, without adequately briefing the issue, that local bribery unrelated to federally-funded activities lies outside constitutionally proper federal power. Because inadequate briefing constitutes a waiver, *e.g.*, **Cinel v. Connick**, 15 F.3d 1338, 1345 (5th Cir. 1994), we do not address this issue.

through three" should have instead been "two through five". Needless to say, the claim does *not* pass muster.

## 4.

Gonzalez does *not* challenge evidentiary sufficiency for one of the two counts on which he was convicted (count 3, the Garcia referral); but, for count 5, the Salinas referral, he claims that explaining the identity of "El Gallo" only gave Longoria publicly-available information.

Gonzalez omits, however, his recorded statement that he would get Salinas' bond approved and his recorded agreement with Longoria that the $300 payment concerned Salinas. In short, there is no manifest miscarriage of justice.

## B.

Gonzalez claims plain error in the district court's not declaring a mistrial — Gonzalez did *not* request one — after it sustained his objections to questioning and the Government's closing argument. The limited standard advanced by Gonzalez is correct; because he received all the relief he requested, we review *only* for plain error. ***United States v. Carter***, 953 F.2d 1449, 1466 (5th Cir. 1992).

After Gonzalez testified that Longoria merely repaid a loan, rather than rewarding prisoner referrals, the Government asked these questions:

Q. When you got arrested by these agents, FBI agents, did you tell them, "Hey, this is a mistake. This is just a big loan. I was getting loan payment back from him." You never told them that, did you?

A. Why would I tell them?

Q. Well, they walked in and accused you of accepting four bribe payments, they took you to jail, you went to court. You never told the agents one time in January that that money you received was a loan payment, did you?

A. Why would I have to tell them? I'm explaining it right now, sir.

Q. My question is, did you ever tell the agents before today that the money you received on that tape was a loan payment?

A. They didn't ask me and I didn't tell them that.

Q. You were given the opportunity to talk to the agents, were you not?

A. There was no need for me to talk.

Q. Did you ever tell –

A. No, sir.

Q. – before you went to court in McAllen, "Judge, this is a loan payment. I don't know what's going on here." You never said that before, did you?"

A. I'm explaining it right now.

Q. So for the first time –

Gonzalez's lawyer finally objected (but without stating a basis); the Court immediately responded, "Sustained. Sustained".

- 8 -

Notwithstanding the foregoing ruling, the Government's closing argument included these comments:

> How does he have the unmitigated gall to come in here, take the witness stand and tell you all, "Oh, I was discussing my loan payments." If it was loan payments, when the FBI went out and picked him up in January, what should have been the first thing out of his mouth? "Wait a minute, why are you arresting me? I didn't take any bribes. This is a loan payment." He never said that —

Gonzalez objected: "He's making an improper comment on his Constitutional right not to say anything, and that is improper". The Court instructed the jury: "Remember my instructions. If the attorneys make reference to the law and it's not consistent with that which I gave you, you are to disregard what the attorneys say to you". Accordingly, the Government quickly reversed course, stating:

> *And he has a Constitutional right not to say anything. And we don't have a problem with that.* But what's so curious, this so-called loan, did you see any promissory notes, anything in writing, any other witnesses? No. There were none because there are none, the loan never occurred.

(Emphasis added.)

In general, under ***Doyle v. Ohio***, 426 U.S. 610, 611 (1976), and its progeny, the Government may not use post-***Miranda***-warning silence to impeach an exculpatory story. However, a mistrial is required only where a prosecutor's comment has a "clear effect" on the jury. *E.g.*, ***United States v. Robles-Vertiz***, 155 F.3d 725, 731

- 9 -

(5th Cir. 1998). In any event, as noted, Gonzalez did *not* request a mistrial.

We find no plain error. The Government's closing explicitly disavows any inference from Gonzalez's silence; moreover, its language implicitly agrees with Gonzalez's earlier statements under cross-examination that he had *no* need to tell his story upon arrest. Considering the denial of any *inference* from the silence, the prior evocation of testimony on the subject was harmless. It is *not* obvious that the comments, so diluted, had a clear effect on the jury.

Those cases in which this court has found plain error in the Government's invitation to a jury to infer recent fabrication from post-arrest silence, such as **United States v. Harp**, 536 F.2d 601 (5th Cir. 1976) (cited by **Chapman v. United States,** 547 F.2d 1240, 1248 (5th Cir. 1977)); **United States v. Johnson**, 558 F.2d 1225 (5th Cir. 1977); and **United States v. Meneses-Davila**, 580 F.2d 888 (5th Cir. 1978); all involve far more pointed commentary on post-arrest silence.

In **Harp**, the Government's closing compared the defendant's story to "Santa Claus and Easter Bunny and the Good Fairy and all of that", asked five rhetorical questions wondering why no statement was given, and restated three versions of what the defendant should have said post-arrest were his story at trial true. **Harp**, 536 F.2d at 602-03 n.2. **Johnson** involved four

separate non-cooperating actions by the defendant upon arrest, elicited from two witnesses. *Johnson*, 558 F.2d at 1226-28. As well, it applies a later-repudiated standard on the prejudice of *Doyle* error. *See Carter*, 953 F.2d at 1466 n.7. *Meneses-Davila* also involved four separate *Doyle* violations (three witnesses and in closing) during a one-day trial; the compressed nature of the trial was critical to the court's conclusion. *Meneses-Davila*, 580 F.2d at 895 & n.12.

By contrast, Gonzalez's trial lasted three days; both sets of references to post-arrest silence were interrupted by objections, which were sustained; and the second set led to the Government's disavowal of the forbidden inference of recent fabrication.

C.

The district court refused Gonzalez's entrapment instruction, and, as noted, denied his new trial motion premised on that refusal. Gonzalez's appellate challenge to that refusal is reviewed for abuse of discretion. *E.g.*, *United States v. Pankhurst*, 118 F.3d 345, 350 (5th Cir. 1997). The instruction is required upon a defendant's *prima facie* showing that he was (1) induced to commit a criminal act by a government agent, and (2) not disposed to commit the act without the inducement. *E.g.*, *United States v. Thompson*, 130 F.3d 676, 689 (5th Cir. 1997).

*No* evidence of government inducement was presented. Longoria testified that, upon cooperating with the FBI, he behaved just as

- 11 -

he had earlier; that he was *never* told to pursue Gonzalez, and did *not* at that point attempt to involve him. Because government inducement is the "creative activity of law enforcement officials in spurring an individual to crime", ***United States v. Bradfield***, 113 F.3d 515, 522 (5th Cir. 1997), only if Longoria's actions differed following his cooperation may they arguably constitute such inducement; otherwise they are simply not "creative activity".

Gonzalez introduced *no* evidence to rebut Longoria's testimony in a way making inducement more plausible. Rather than suggesting that Longoria's behavior affected him in late 1997 in a manner distinct from how it had previously, Gonzalez's version of events — that Longoria simply repaid a loan made several months before any of the bribes in question — *contradicts entrapment*. According to Gonzalez, the claimed prior loan to Longoria, *not* Longoria's behavior, spurred his actions in receiving the money; and, Gonzalez denied having anything to do with the relevant prisoners. Moreover, Longoria's payments on each of the four recorded occasions *followed* Gonzalez's critical role (as inferred from the evidence) in referring the prisoners.

## III.

Accordingly, the judgment is

***AFFIRMED.***

- 12 -