# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20235

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

REBMANN ONGAGA; ANDREW MOKORO; HERMAN OGOTI; ALFONSO ONGAGA,

Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2016

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas

Before JONES, WIENER, and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

Defendants Andrew Mokoro, Herman Ogoti, Alfonso Ongaga, and Rebmann Ongaga appeal their separate judgments of conviction. We affirm all of the convictions, with the exception of Herman Ogoti's and Rebmann Ongaga's convictions for marriage fraud.

## I.

## FACTS AND PROCEEDINGS

A grand jury returned an indictment in November 2010, charging Andrew Mokoro ("Mokoro"), Herman Ogoti ("Ogoti"), Alfonso Ongaga ("Alfonso"), and Rebmann Ongaga ("Rebmann") with conspiracy to commit marriage fraud, marriage fraud, and fraud and misuse of visa, permits, and

other documents. In May 2012, a grand jury returned a ten count second superseding indictment against the defendants. Count One charged Mokoro, Ogoti, Alfonso, and Rebmann with conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1325(c). The indictment alleged that the object of their conspiracy was to knowingly enter into marriages and to help others enter into marriages for the purpose of evading immigration laws, in violation of 8 U.S.C. § 1325(c). Counts Two, Three, and Four charged Ogoti, Rebmann, and Mokoro, respectively, with marriage fraud, in violation of 8 U.S.C. § 1325(c). Counts Five, Six, and Seven charged Ogoti, Mokoro, and Rebmann, respectively, with fraud and misuse of visa, permits, and other documents, in violation of 18 U.S.C. § 1546(a). Count Eight charged Rebmann with tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3). Counts Nine and Ten charged Alfonso and Ogoti, respectively, with unlawful procurement of naturalization, in violation of 18 U.S.C. § 1425(b).

After a six-day trial, a jury found the defendants guilty on all counts, with the exception of Rebmann's witness-tampering count. The evidence showed that the defendants—all Kenyan nationals—married members of a closely connected group of American women to gain residency and citizenship. The defendants then prepared fraudulent immigration forms and took additional steps to make their marriages appear legitimate. The evidence further showed that the defendants sought to procure American spouses for other Kenyan nationals—some residing in the United States, others residing in Kenya—for the same purpose.

No. 14-20235

## II.

## ANALYSIS

### A. Count One

Count One charged the defendants with conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1325(c). All of the defendants contend that Count One should be dismissed because the government failed to prove an offense occurring within the statute of limitations. All of the defendants preserved their challenges to the sufficiency of the evidence by moving for acquittal under Federal Rule of Criminal Procedure 29 at the conclusion of the government's case and again at the close of all evidence, so our review is de novo.[1] We view all evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in favor of the jury's verdict.[2] We will affirm the jury's verdict if we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]

The statute of limitations for conspiracy to commit marriage fraud in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1325(c) is five years.[4] To prove a conspiracy under 18 U.S.C. § 371, the government had to prove

> (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3)

---

[1] *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012).

[2] *Id.*

[3] *Id.*

[4] *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."); *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (applying 18 U.S.C. § 3282(a)'s general five-year statute of limitations to conspiracy to commit marriage fraud).

an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy.[5]

For this charge to be timely, the government had to prove "the existence of the conspiracy within the five years prior to the return of the indictment, and . . . the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement."[6]

The defendants first contend that the government did not prove a single conspiracy; rather, they assert, their individual participations in any conspiracy ended on the occurrence of their respective marriages. It next follows, they each argue, that because each of their marriages occurred more than five years before the original indictment, the charge in Count One is untimely. In other words, the defendants contend that the government failed to prove an overt act of a single conspiracy occurring within the limitations period.

Initially, we examine whether the government proved a single conspiracy. "The principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings."[7] Whether the evidence shows a single conspiracy or multiple conspiracies is a fact question for the jury to decide.[8] "We will affirm the jury's finding that the government proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most favorable to the government, would

---

[5] *United States v. Richard*, 775 F.3d 287, 294 (5th Cir. 2014) (quoting *United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010)).

[6] *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976).

[7] *United States v. Simpson*, 741 F.3d 539, 548 (5th Cir. 2014) (citing *United States v. Mitchell*, 484 F.3d 762, 770 (5th Cir. 2007)).

[8] *Id.* (quoting *Mitchell*, 484 F.3d at 769).

preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt."[9]

The government alleged that the common goal of the conspiracy was for the defendants to enter into marriages for the purpose of evading immigration laws, in violation of 18 U.S.C. § 1325(c). The indictment elaborated that the common goal was not only to accomplish the defendants' marriages, but also to facilitate the marriages of other Kenyan nationals so that they could enter or remain in the United States. The evidence supported these allegations. For example, Alfonso met his wife through Lawrence Adams, whom Alfonso asked if he knew a woman he could marry to gain citizenship in exchange for money. Alfonso later paid Adams to marry Alfonso's friend so that the friend could obtain American citizenship. Ogoti entered into his own fraudulent marriage. His wife, Sabrina Adams, introduced her daughter Deshae Adams and Adams's friend, Dyshae Foster, to the defendants. Mokoro entered into his own fraudulent marriage and offered Deshae Adams and Dyshae Foster money to travel to Kenya to marry Kenyan men, and he tried to help them obtain passports. Rebmann also entered into his own fraudulent marriage and took Deshae Adams and Dyshae Foster shopping to buy them clothes and luggage for their trip to Kenya.

The nature of the scheme looks to whether "the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture."[10] Here, the defendants' marriages allowed them to stay in the United States to recruit potential spouses. Further, the success of the defendants' marriages encouraged others

---

[9] *Id.* (quoting *Mitchell*, 484 F.3d at 769) (internal quotation marks omitted).
[10] *United States v. DeVarona*, 872 F.2d 114, 118 (5th Cir. 1989) (quoting *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982)).

No. 14-20235

to participate in the scheme. For example, Mokoro's wife, Tequila Rhymes, testified that she decided to marry Mokoro after observing and hearing about Alfonso's fraudulent marriage.

The final prong "examines the interrelationships among the various participants in the conspiracy."[11] "The more interconnected the relationships, the more likely it is that there is a single conspiracy."[12] Here, the participants were either family members or friends and the conspiracy largely existed to help other family members and friends gain American citizenship. Through this close network of family members and friends, the defendants entered their own fraudulent marriages and helped other do the same.

Considering this evidence, we conclude that a reasonable jury could have found that the government proved a single ongoing conspiracy to commit marriage fraud.

Concluding that the government proved a single conspiracy, we turn to whether the government proved overt acts of the conspiracy occurring within the limitations period. The government alleged and presented evidence of several overt acts in the indictment which were within the limitations period, most notably the efforts of several defendants to have Deshae Adams and Dyshae Foster travel to Kenya to marry individuals so that they would be able to gain an immigration benefit. Because the government alleged and proved an overt act occurring with the limitations period, the charge in Count One was timely and we affirm the convictions.

---

[11] *Simpson*, 741 F.3d at 549 (quoting *United States v. Morris*, 46 F.3d 410, 416 (5th Cir. 1995)).

[12] *Id.*

No. 14-20235

**B. Counts Two and Three**

Ogoti and Rebmann were both charged with and convicted of marriage fraud, in violation of 8 U.S.C. § 1325(c). Both defendants challenge their convictions as untimely, and both moved for acquittal on this ground before the district court.[13] We review de novo the district court's legal conclusion that that these charges were not barred by the statute of limitations.[14]

Count Two alleged that Ogoti entered into a fraudulent marriage on February 10, 2004, and Count Three alleged that Rebmann entered into a fraudulent marriage on February 21, 2005. Both marriages occurred more than five years before the original indictment in November 2010 and the second superseding indictment in May 2012. Because the offense of marriage fraud under 8 U.S.C. § 1325(c) does not provide a statute of limitations, 18 U.S.C. § 3282(a)'s five-year limitations period applies. Both Ogoti and Rebmann contend that their charges for marriage fraud should have been dismissed as untimely. To reach this conclusion, they urge us to hold that marriage fraud is not a continuing offense. The government concedes that Ogoti's and Rebmann's charges for marriage fraud were time-barred because the charges occurred more than five years after their marriages.

Generally, the statute of limitations begins to run when the crime is complete, meaning that all the elements of the crime have been satisfied.[15] For a continuing offense, however, "the statute of limitations does not being to run when all elements of the crime are first satisfied, but rather when the ongoing

---

[13] At the district court, Ogoti moved for acquittal on the basis that the statute of limitations had run as to Counts One and Four. Ogoti, however, was not charged in Count Four. We assume that Ogoti meant to challenge Count Two on this basis.

[14] *United States v. Irby*, 703 F.3d 280, 282–83 (5th Cir. 2012).

[15] *United States v. Tavarez-Levario*, 788 F.3d 433, 436 (5th Cir. 2015).

commission of the crime comes to an end."[16] We are reticent to find an offense to be continuing because such a finding extends the statute of limitations.[17] Only when "the explicit language of the substantive criminal statute compels such a conclusion" or "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one" will we construe an offense as continuing.[18]

We thus should begin with the language of the statute. The marriage fraud statute reads:

> Any individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws shall be imprisoned for not more than 5 years, or fined not more than $250,000, or both.[19]

The elements of marriage fraud require only that the defendant (1) knowingly entered into a marriage (2) for the purpose of evading any provision of the immigration laws.[20] Nothing in the statute's plain language, for instance, indicates that a person need actually apply for immigration benefits to violate the statute. Actions occurring after the marriage do not constitute elements of the offense under § 1325(c).[21] Instead, all of the elements of marriage fraud are satisfied when the defendant enters into the marriage.[22] In sum, the plain

---

[16] *Id.* at 437.

[17] *See Toussie v. United States*, 397 U.S. 112, 115 (1970) ("[C]riminal limitations statutes are 'to be liberally interpreted in favor of repose.'" (quoting *United States v. Habig*, 390 U.S. 222, 227 (1968))).

[18] *Tavarez-Levario*, 788 F.3d at 437 (quoting *Toussie*, 397 U.S. at 115).

[19] 8 U.S.C. § 1325(c).

[20] *United States v. Ortiz-Mendez*, 634 F.3d 837, 839 (5th Cir. 2011).

[21] *See United States v. Rojas*, 718 F.3d 1317, 1320 (11th Cir. 2013) (holding that marriage fraud is not a continuing offense); *cf. United States v. Sonmez*, 777 F.3d 684, 687–88 & n.4 (4th Cir. 2015) (listing elements of marriage fraud and collecting cases); *Ortiz-Mendez*, 634 F.3d at 839–40 (same).

[22] *Rojas*, 718 F.3d at 1320.

language of the statute does not compel the conclusion that marriage fraud is a continuing offense.[23]

Neither is the nature of the crime such that Congress would have intended it to be treated as a continuing offense. Typically, such crimes are those which involve an "ongoing threat of harm" or those "offenses that prohibit an individual from remaining in an unlawful condition or status."[24] There is no ongoing threat of harm from having entered into a marriage to evade the immigration laws unless those laws are actually violated. In that case, fraudulently obtaining immigration benefits or lying to federal agents are themselves crimes.[25] Furthermore, being married—even for the purpose of evading immigration laws—is not itself an unlawful condition or status.

Concluding that marriage fraud is not a continuing offense, we hold that the charges of marriage fraud against Ogoti and Rebmann were untimely and should be dismissed. Accordingly, we reverse the district court's denial of Ogoti's and Rebmann's motions for acquittal on Counts Two and Three, respectively, and vacate their convictions on those counts.

## C. Count Four

Mokoro challenges the sufficiency of the evidence to convict him on Count Four's charge of marriage fraud for his marriage to Angela Young in 2010. We review de novo Mokoro's preserved challenge to the sufficiency of the evidence.[26] The gist of Mokoro's challenge is that because Young did not testify at trial, there was not sufficient evidence to show that he entered into the marriage for the purpose of evading immigration laws. According to Mokoro,

---

[23] *See id.* ("[N]othing in the text of § 1325(c) compels the conclusion that Congress intended marriage fraud to be a continuing offense.").

[24] *Tavarez-Levario*, 788 F.3d at 439 (emphasis omitted).

[25] *See id.* at 440.

[26] *Grant*, 683 F.3d at 642.

who did not testify, Young was the only person—other than himself—who could have testified about the purpose of their marriage.

As stated, the government needed to prove that Mokoro (1) entered into a marriage (2) for the purpose of evading immigration laws.[27] Whether a defendant intended "to establish a life with his spouse" is one factor that may be considered in determining the purpose of the marriage.[28] The first factor, that Mokoro married Young, is undisputed. As for the second factor, the government adduced evidence from which the jury could have reasonably concluded that Mokoro entered the marriage for the purpose of evading immigration laws. The government initially showed that during its investigation, Young was never observed at Mokoro's residence, despite being his wife. The government also proved that both before and during Mokoro's marriage to Young, Mokoro maintained a relationship with another woman, Tabitha Wanjohi. Wanjohi testified that she and Mokoro lived together and had children together. The government further showed that before marrying Young, Mokoro had married another U.S. citizen, Tequila Rhymes, for immigration purposes. Rhymes testified that she married Mokoro for money so that he could become a citizen. They divorced and he withdrew his petition to adjust his immigration status shortly thereafter. Only ten months later, Mokoro married Young and filed new immigration forms. A reasonable jury could have found that Mokoro married Young for the purposes of evading immigration laws. We affirm Mokoro's conviction on Count Four.

---

[27] *Ortiz-Mendez*, 634 F.3d at 839.
[28] *Id.* at 840.

No. 14-20235

## D. Counts Five and Ten

Ogoti challenges his convictions under Count Five for visa fraud, 18 U.S.C. § 1546(a), and under Count Ten for unlawful procurement of naturalization, 18 U.S.C. § 1425(b), as untimely. Title 18 U.S.C. § 3282(a) imposes a five-year limitations period on both counts. In the district court, Ogoti did not move for acquittal on the ground that these counts were barred by the statute of limitations. The Supreme Court recently instructed that failure to raise a limitations defense under 18 U.S.C. § 3282(a) "at or before trial means that it is reviewable on appeal—if at all—only for plain error."[29] In the same breath, the Court instructed that "a district court's failure to enforce an unraised limitations defense under § 3282(a) cannot be plain error."[30] We find no error since Ogoti failed to raise his limitations defense at or before trial.[31]

## E. Counts Six and Seven

Mokoro and Rebmann challenge their convictions for visa fraud, Counts Six and Seven, respectively. They contend that the government's proof was a constructive amendment to the indictment and also raise a challenge to the sufficiency of the evidence. We review de novo Mokoro's and Rebmann's claims of constructive amendment.[32] We review their challenge to the sufficiency of the evidence "in the light most favorable to the jury's verdict and affirm if a

---

[29] *Musacchio v. United States*, 136 S. Ct. 709, 718 (2016).

[30] *Id.* In so holding, the Court declined to decide whether failure to raise a limitations defense under § 3282(a) amounts to waiver or forfeiture. *Id.* at 718 n.3.

[31] Even if Ogoti had preserved this issue, his argument is unavailing. As to Count Five, the evidence showed that Ogoti made a false statement on Form I-751 on May 9, 2007, within the limitations period. Likewise, as to Count Ten, the evidence showed that Ogoti made a false representation on his N-400 Application for Naturalization on February 21, 2010, again within the limitations period.

[32] *United States v. Thompson*, 647 F.3d 180, 183 (5th Cir. 2011).

11

rational trier of fact could have found that the government proved all essential elements of a crime beyond a reasonable doubt."[33]

*1. Constructive Amendment*

Mokoro and Rebmann first contend that the government's proof constituted a constructive amendment of the indictment. The indictment charged them with making a false statement on Form I-751 when they swore that they "had entered into a bona fide marriage when in truth and fact such was not true," in violation of 18 U.S.C. § 1546(a). On Form I-751 a petitioner certifies under penalty of perjury that his or her "marriage was entered in accordance with the laws of the place where the marriage took place and was not for the purpose of procuring an immigration benefit." Because the false statement alleged in the indictment is not identical to the false statement on the Form I-751 that the government proved at trial, Mokoro and Rebmann contend that the government's proof amounted to a constructive amendment of the indictment.

The right to be tried only on charges alleged in a grand jury indictment flows from the Fifth Amendment.[34] Constructive amendment occurs, in violation of this principle, "when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged."[35] In other words, constructive indictment occurs when the district court "allows proof of an essential element of the crime on an alternative basis provided by the statute but not charged in the indictment."[36]

---

[33] *Id.*

[34] *United States v. Arlen*, 947 F.2d 139, 144 (5th Cir. 1991).

[35] *United States v. Robles-Vertiz*, 155 F.3d 725, 728 (5th Cir. 1998) (citation omitted).

[36] *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012) (quoting *United States v. Phillips*, 477 F.3d 215, 222 (5th Cir. 2007)).

No. 14-20235

In evaluating a claim of constructive amendment, we "scrutinize any difference between an indictment and a jury instruction [and] reverse only if that difference allows the defendant to be convicted of a separate crime from the one for which he was indicted."[37] Short of this, "we review the purported amendment as a variance, and the defendant must 'show how the variance in the language between the jury charge and the indictment so severely prejudiced his defense that it requires reversal under harmless error review.'"[38]

We hold that the indictment was not constructively amended. In relevant part, 18 U.S.C. § 1546(a) makes it a crime to "knowingly make[] under oath . . . or . . . under penalty of perjury . . . any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws . . . ." Count Six of the indictment charged that Mokoro

> knowingly made under oath and under penalty of perjury, subscribed as true, and presented an application containing a false statement with respect to a material fact on United States Citizenship and Immigration Services Form I-751, for the purpose of procuring an immigration benefit that in such petition the defendant stated that he, Andrew Mokoro and A.Y., had entered into a bona fide marriage when in truth and fact such was not true.

Count Seven of the indictment contained an identical allegation against Rebmann, except for the identity of Rebmann's putative spouse.

The district court instructed the jury that the government must prove beyond a reasonable doubt that (1) the defendant made a false statement, (2) the defendant acted with knowledge that the statement was untrue, (3) the statement was material to the activities or decisions of Immigration and

---

[37] *United States v. Nunez*, 180 F.3d 227, 231 (5th Cir. 1999).

[38] *Jara-Favela*, 686 F.3d at 300 (quoting *Nunez*, 180 F.3d at 231).

Customs Enforcement; that is, it had a natural tendency to influence or was capable of influencing the agency's decisions or activities, (4) the statement was made under oath or penalty of perjury, and (5) the statement was made on United States Citizenship and Immigration Services Form I-751. Mokoro and Rebmann do not challenge the district court's recitation of the elements of the offense. Instead, Mokoro and Rebmann contend that the government's proof amounted to a constructive amendment of the indictment because the government proved a different false statement than the one alleged in the indictment. We disagree.

The indictment alleged *generally* that Mokoro and Rebmann falsely certified on Form I-751 that they had entered into bona fide marriages. The charges identify exactly the manner in which Mokoro and Rebmann made the false statements and identify why the statements were false. At trial, the government proved that Mokoro and Rebmann falsely certified the *specific* statement in Form I-751 that their marriages were "entered in accordance with the laws of the place where the marriage took place and . . . not for the purpose of procuring an immigration benefit."

Confronted with similar facts, we have found no constructive amendment. For example, in *United States v. Jara-Favela*, the indictment charged the defendant with lying to federal officers when he told one officer that he was traveling from Laredo, Texas, and told the other officer that he was traveling from Nuevo Laredo, Mexico.[39] The evidence at trial, however, showed instead that he told one officer he was coming from the "north" and

---

[39] *Id.*

14

another he was coming from the "south."[40] We found no constructive amendment because, in context, the terms were synonymous.[41]

In this context, as in *Jara-Favela*, the false statement alleged and the false statement proven were synonymous. We note initially that "bona fide" means something "made in good faith without fraud or deceit; legally valid."[42] Beyond its common meaning, the term "bona fide" has been used as shorthand to describe whether a marriage was entered into for the purpose of evading the immigration laws.[43] Critically, the government relied on the same theory of conviction in the indictment and at trial. The indictment, evidence, and convictions were all based on the same false statement. The jury was not permitted to convict Mokoro and Rebmann of a different crime than the one charged, nor was it permitted to convict on a false statement outside the scope of the indictment. The government's allegations and the evidence sustaining the convictions shared the same common nucleus: false statements by Mokoro and Rebmann on Form I-751 regarding the legitimacy of their marriages. The government did not, for example, introduce evidence of false statements on different immigration forms or of false statements pertaining to anything but the defendants' marriages.

At most, the government's proof at trial amounted to a variance from the indictment. We thus ask whether the defendants have shown that "the

---

[40] *Id.*

[41] *Id.*

[42] *Bona fide*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1986).

[43] *See, e.g., I.N.S. v. St. Cyr*, 533 U.S. 289, 335 (2001) (SCALIA, J., dissenting) (referring to aliens deportable for "procur[ing] a visa through a marriage that was not bona fide" and citing 8 U.S.C. § 1227(a)(1)(G), which discusses aliens deportable for having procured a visa through marriage fraud); *Alaswad v. Johnson*, 574 F. App'x 483, 485–86 (5th Cir. 2014) (quoting the Board of Immigration Appeals as using the term "not bona fide" as synonymous with a "a marriage for the purpose of evading the immigration laws").

variance in the language between the jury charge and the indictment so severely prejudiced [their] defense that it requires reversal under harmless error review."[44] A variance rises to this level only when "it prejudices the defendant's 'substantial rights,' either by surprising the defendant at trial or by placing him at risk of double jeopardy."[45] The instant variance was harmless. Both Mokoro and Rebmann knew that the term "bona fide" as alleged in the indictment referred to the legitimacy of their marriages as they had represented on Form I-751. This is evidenced by Mokoro's and Rebmann's strategy at trial to show that their marriages were genuine. Moreover, Form I-751 itself contains no separate reference to a "bona fide marriage" but instead requires only the certification that the government proved at trial. Thus, the reference to "bona fide marriage" could only refer to the marriage certification. Neither is there a risk of double jeopardy because there was no evidence of any other false statements.

*2. Sufficiency of the Evidence*

Mokoro and Rebmann next challenge their convictions for visa fraud on the basis of the sufficiency of the evidence. The elements of visa fraud under 18 U.S.C. § 1546(a) are "(1) the defendant made a false statement, (2) the statement was made knowingly and (3) under oath, (4) the statement concerns a 'material fact,' (5) and the statement was made in an application required by the United States immigration laws and regulations."[46] Mokoro and Rebmann only contest the first element, asserting that the government failed to prove that they made false statements.

---

[44] *Jara-Favela*, 686 F.3d at 300 (quoting *Nunez*, 180 F.3d at 231).

[45] *United States v. Baker*, 17 F.3d 94, 98 (5th Cir. 1994).

[46] *United States v. Boskic*, 545 F.3d 69, 85 (1st Cir. 2008) (citing 18 U.S.C § 1546(a); *United States v. Chu*, 5 F.3d 1244, 1247 (9th Cir. 1993)).

The government presented sufficient evidence to allow a reasonable jury to conclude that Mokoro and Rebmann each made a false statement by certifying on their Form I-751 "that the marriage was not for the purpose of procuring an immigration benefit." In our resolution of Mokoro's challenge to the sufficiency of the evidence on Count Four, we deemed the evidence sufficient for a reasonable jury to conclude that Mokoro entered his marriage to Young to evade the immigration laws. The same evidence is also sufficient for the jury to conclude that he made a false statement when he claimed the opposite on Form I-751.

As for Rebmann, his wife, Vasha Adams, testified that she received payment to travel to Kenya and marry Rebmann so that he could come to the United States. She was paid to do this by Rebmann's brother, Alfonso. Adams testified that she first met Rebmann when he picked her up from the airport in Kenya. She only recognized him because he had a sign with his name on it. Rebmann and Adams married the next day and Adams departed Kenya that night. When she returned to the United States, she lied to U.S. Customs officials about the purpose of her trip. She did not see Rebmann again for two years. She would occasionally see him in the United States, but she characterized their relationship as "just business." Rebmann asked her to take photographs that showed them as a happy, married couple to support his immigration paperwork. This evidence was sufficient for a reasonable jury to conclude that Rebmann made a false statement on Form I-751. We affirm Mokoro's and Rebmann's respective convictions on Counts Six and Seven.

## F. *Batson* Challenge

In their final challenge, the defendants assert that the district court erred by failing to make factual findings under the third prong of *Batson*.

No. 14-20235

At the close of voir dire, Ogoti's counsel made a *Batson* challenge to the government's peremptory strike of juror number four, Maria Ofeno. He articulated that she "is in a protected class under *Batson*" and stated that, based on the questions asked and answers given during voir dire, the prosecution had used its strike in a discriminatory manner. Ofeno's race is not revealed in the record, but Alfonso's briefing makes clear that the defendants believed the government's challenge was based on race.

The prosecution responded with race-neutral reasons. First, Ofeno received her permanent residence and eventually her citizenship through the visa lottery and emigrated from Nigeria. She sponsored her husband for permanent residence and citizenship and they used the same process that many of the defendants used. She stated that she had friends who had used the marriage-based immigration system to attain their citizenship. Second, Ofeno was hesitant in responding to the prosecutor's questions during voir dire. Third, Ofeno expressed the belief that both the husband and wife should be charged in a marriage fraud case.

Ogoti's counsel then argued that the government's reasoning about Ofeno's immigration and her husband's immigration was pretextual. His primary evidence was that, of the five jurors who indicated that they had immigrated to the United States, the prosecution struck only Ofeno. The government distinguished Ofeno's situation from the others because Ofeno's act of sponsoring her husband fit almost squarely with the facts of this case. Moreover, of these five jurors, three were struck for cause, one was struck by the defendants, and the last, Ofeno, was struck by the government. The district court then denied the challenge: "I don't think the strike was for the—was for a suspect reason. I think it was race neutral, origin neutral and gender neutral, and I'm going to deny the Batson challenge."

No. 14-20235

Under *Batson v. Kentucky*[47] and its progeny, parties may not exercise peremptory challenges to strike jurors based on race, ethnicity, or sex.[48] A challenge to a peremptory strike proceeds in three steps. First, the challengers (the defendants in this case) make an initial showing that the challenged party made a strike on an impermissible basis. Second, the challenged party must offer a neutral reason for the strike. Third, "the district court must determine whether the [challenger] has carried his burden of proving purposeful discrimination."[49]

On appeal, the defendants challenge only the district court's determination that the government's peremptory strike did not constitute purposeful discrimination. Because "[a] district court makes a finding of fact when it determines whether a prosecutor has purposively discriminated on the basis of race in striking a juror," we grant "great deference" to the district court's findings, reviewing them for clear error and remaining cognizant that that court's observations of the prosecutor and the venire persons in question during voir dire are often decisive.[50] Courts should not weigh whether "counsel's reason is suspect, or weak, or irrational," but should instead determine "whether counsel is telling the truth in his or her assertion that the challenge is not race-based."[51]

Alfonso's counsel observes that the district court made no factual findings to which we could owe any deference. Counsel argues instead that the district court accepted the government's race-neutral explanation at face value

---

[47] 476 U.S. 79 (1986).

[48] *Rivera v. Illinois*, 556 U.S. 148, 153 (2009).

[49] *United States v. Thompson*, 735 F.3d 291, 296 (5th Cir. 2013).

[50] *Id.*

[51] *Id.* at 297 (quoting *United States v. Bentley-Smith*, 2 F.3d 1368, 1375 (5th Cir. 1993)).

when it should have evaluated the credibility and plausibility of that explanation. This, counsel contends, amounts to a combination of *Batson*'s steps two and three, a practice that the Supreme Court has forbidden.[52]

The government correctly counters that there is no requirement in this circuit that a district court make explicit factual findings during *Batson*'s third step. Indeed, "a district court may make 'implicit' findings while performing the *Batson* analysis."[53] A recent panel of this court explicitly rejected such a requirement, even when the only race-neutral reason advanced was a demeanor-based reason not otherwise reviewable based on the record.[54] Although some other courts disagree, failure to make explicit factual findings on the third step is not itself reversible error.[55]

The district court heard argument from both sides and expressly stated, "I don't think the strike was . . . for a suspect reason." By finding that the challenged strike was not suspect, the district court necessarily found the government's explanation credible: It could not have made that statement if it disbelieved the government's race-neutral explanation. The record reflects that the district court performed the third step of the *Batson* analysis adequately and implicitly found that the government's strike was not purposefully discriminatory.

The question thus becomes whether the district court committed clear error in ruling that no *Batson* violation occurred in the government's strike of

---

[52] *See Purkett v. Elem*, 514 U.S. 765, 768 (1995).

[53] *United States v. McDaniel*, 436 F. App'x 399, 405 (5th Cir. 2011) (unpublished) (collecting cases).

[54] *See Thompson*, 735 F.3d at 300–01.

[55] *See Higgins v. Cain*, 720 F.3d 255, 268 (5th Cir. 2013) (noting a circuit split on "whether a trial judge must make explicit findings of fact at *Batson*'s third step").

Ofeno.[56] On appeal, Alfonso contends that the prosecutor's explanation in striking Ofeno was not persuasive because she never stated that she could not be fair; and she agreed that marriage fraud should be prosecuted. That a witness made some statements favorable to the government, however, does not nullify the government's other, legitimate concerns. Here, those included that Ofeno had used the identical immigration process with her husband that some of the defendants were accused of fraudulently using with their putative spouses. This supports the district court's conclusion that the government's strike of Ofeno was not pretextual.[57] The defendants have failed to show that the district court clearly erred in finding that the strike was not purposefully discriminatory.

## III.

## CONCLUSION

We vacate Ogoti's and Rebmann's convictions on Counts Two and Three, respectively, and we affirm the convictions of all defendants on all other counts.

---

[56] *See McDaniel*, 436 F. App'x at 406 ("Because we conclude that the district court implicitly found that the strike of prospective juror Johnson was not purposefully discriminatory, McDaniel must show that this finding was clearly erroneous in order to prevail in his *Batson* challenge.").

[57] In the district court, Alfonso's counsel also attempted to show that the strike was pretextual based on the presence of other prospective jurors with similar experiences in the immigration system. Evidence that the government struck Ofeno, but not other similarly situated jurors of a different race could show purposeful discrimination. *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."). Here, five jurors, including Ofeno, indicated that they gained their citizenship through the naturalization process. Three of them were struck for cause. The defense struck another, and the government struck Ofeno. Thus, this argument is unavailing because all of the similarly situated jurors were either excluded for cause or excluded by the defense.