# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-31148

United States Court of Appeals
Fifth Circuit

**FILED**

September 13, 2017

Lyle W. Cayce
Clerk

SEALED APPELLEE

Plaintiff–Appellee

v.

SEALED JUVENILE,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:15-CR-126-1

Before JOLLY and ELROD, Circuit Judges, and RODRIGUEZ, District Judge.*

XAVIER RODRIGUEZ, District Judge:**

The mandate is recalled and this opinion is substituted for our opinion of August 18, 2017. After a bench trial, Defendant–Appellant, a juvenile, was adjudicated delinquent based on attempted aggravated sexual abuse that occurred on a military installation. The district court, when announcing its

_____

* District Judge of the Western District of Texas, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

verdict, stated that Appellant "had an intent to commit a sexual act or actually was committing a sexual act, just not the one that everybody thought he was going to commit." Because of this comment, it is unclear whether Appellant was adjudicated delinquent on the basis of an offense charged in the information. Accordingly, the judgment of the district court is VACATED and this action is REMANDED for further proceedings not inconsistent with this opinion, including a new trial if deemed appropriate by the district court.

## BACKGROUND

### A. Factual Background

In November 2014, Appellant, approximately fourteen or fifteen years old at the time, moved into the home of his maternal aunt in Georgia. In January 2015, the family, including Appellant, moved to a military installation in Louisiana. The family, who lived in a one-story home on the military installation, consisted of Appellant, his aunt, his aunt's husband, and Appellant's three female cousins, ages twelve, nine, and seven. Appellant's aunt had a number of rules governing the household, including that all doors inside of the house remain open at all times.

The incident that forms the basis of Appellant's underlying delinquency adjudication occurred on February 23, 2015. An ice storm caused school to be cancelled that day. Shortly after lunch, the aunt's husband left home for work. The remaining members of the family—Appellant, his aunt, and his three cousins—began watching a movie.

Sometime after the movie finished and the children went to other rooms, Appellant's aunt got up to tell the children that she was leaving to run an errand. As she walked down the hallway, she noticed that the playroom door was mostly closed, in violation of her household rule. She opened the

2

door to the playroom to find her seven-year-old daughter (Appellant's cousin) with her pants and underwear pulled down and pinned beneath her knees. Both of her hands and both of her knees were on the ground. Appellant was positioned behind her.

The parties presented conflicting accounts of how the girl's pants and underwear came to be pulled down, along with the precise position of Appellant in relation to her. According to the girl, she went into the playroom first. Appellant came in after her and pulled down her pants and underwear. She testified that she was sitting down on her hands and knees facing downward. She testified that Appellant was behind her, that he touched her on "the outside" of her bottom with his hand, and that he was on top of her with all of his body touching hers. She said this contact made her uncomfortable.

Appellant's aunt testified that she saw Appellant tilted over the girl, leaning over her with his hands on the ground close to hers. The aunt said that Appellant's abdomen was touching the girl's back. She testified that from behind, she could see "a little bit of [Appellant's] skin and his butt crack," and that it looked like "[Appellant] was about to have sex with [her] daughter."

Appellant testified to a different version of events. He testified that when the movie ended, he went to the playroom to watch TV and the girl was not there at that time. After he went into the playroom, the girl entered, "laughing and being silly." Appellant testified that she pulled down her own pants and underwear, and that he was trying to get her to pull them back up before his aunt noticed. While Appellant was trying to get the girl to pull her pants up, his aunt entered. At the time, Appellant was wearing sweatpants,

which he acknowledges may have slipped, but he noted that his underwear did not slip at all.

Upon opening the door to the playroom and seeing Appellant and the girl, the aunt cursed at and began hitting Appellant, who attempted to explain that "It's not what you think." Appellant offered to leave the house if his aunt did not call the police, but she said "[y]ou got to go to jail," and called the police, who arrested Appellant.

## B. Procedural Background

On June 11, 2015, the United States Government filed a Certification to Proceed Under the Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. §§ 5031 *et. seq.*, pointing out a strong federal interest in this case because the February 2015 incident occurred on the Fort Polk military installation. Consistent with the procedures of 18 U.S.C. § 5032, Appellant was charged in a one-count juvenile information with an act of juvenile delinquency. In particular, the information alleged that Appellant attempted to engage in a sexual act, as defined in 18 U.S.C. § 2246(2)(C), with a person under twelve years of age, which, if done by an adult, would constitute aggravated sexual abuse in violation of 18 U.S.C. § 2241(c).

The district court held a bench trial on January 14, 2016, and found against Appellant, adjudicating him delinquent for the crime of aggravated sexual abuse. Neither party requested specific findings of fact. But in the course of announcing her findings, the district judge stated:

> I think the evidence is sufficient to determine [Appellant] a delinquent based on the events of February 23rd, 2015, in which *he, in my opinion, had an intent to commit a sexual act or actually was committing a sexual act, just not the one that everybody thought he was going to commit.* So based on that, I

4

find him to be a delinquent and order to remand him into custody.

R. at 120 (emphasis added).

In October 2016, the district court sentenced Appellant to supervised probation to last until his twenty-first birthday.[1] At the Government's request, the district court ordered that Appellant register as a sex offender as a special condition of his probation. Defense counsel objected, arguing that a lifelong requirement for Appellant to register as a sex offender violates the Eighth Amendment to the U.S. Constitution, particularly in light of the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460(2012).[2]

Appellant filed a timely notice of appeal on November 4, 2016.

## DISCUSSION

Appellant argues that the district court adjudicated him delinquent on the basis of conduct that was not charged in the information, which constituted a constructive amendment and therefore violated his Due Process rights. Blue Br. at 16. His argument starts with the information,[3] which alleges that

---

[1] Such sentences cannot extend beyond a delinquent's twenty-first birthday. 18 U.S.C. § 5037(b)–(d).

[2] Because the Court vacates and remands the district court's judgment on other grounds, this aspect of the appeal is now moot.

[3] In the equivalent, non-juvenile criminal context, a constructive amendment is based on discrepancies between the *indictment* and a finding of guilt. *See United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001) ("[A] constructive amendment occurs if the jury is permitted to convict on an alternative basis permitted by the statute but not charged in the indictment." (internal citation and quotations omitted)). Due to the juvenile context of this case, Appellant's argument is properly focused on the alleged discrepancy between the wrongful conduct described in the *information* and the district court's adjudication of delinquency. *See* 18 U.S.C. § 5032 (requiring that district court delinquency adjudications

> [Appellant], a male juvenile who at the time had not reached his eighteenth birthday, committed an act of juvenile delinquency, in violation of Title 18, United States Code, Section 5032, to wit: the defendant did knowingly engage in and attempt to engage in a sexual act, as that term is defined in Title 18, United States Code 2246(2)(C), with a person who had not attained the age of 12 years, which would have been a crime in violation of Title 18, United States Code, Section 2241(c), if he had been an adult.

R. at 139–40. Section 2246(2)(C) defines "sexual act" as "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Appellant's constructive amendment argument turns on the district court's statement when it announced its verdict: "[Appellant], in my opinion, had an intent to commit a sexual act or actually was committing a sexual act, just not the one that everybody thought he was going to commit." R. at 120.

There is no dispute that Appellant did not file a timely objection to this statement, which he now asserts is a constructive amendment.

## I.  Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 as an appeal from a final decision of a district court.[4]

## II.  Standard of Review

"[A] constructive amendment occurs if the jury is permitted to convict on an alternative basis permitted by the statute but not charged in the

---

proceed by information); *see also United States v. Juvenile Male*, 554 F.3d 456, 464 (4th Cir. 2009) ("Notably, a juvenile delinquency information functions as an indictment.").

[4] The Government relies on our decision in *United States v. Carmichael*, 343 F.3d 756 (5th Cir. 2003) to argue that 18 U.S.C. § 3742 does not confer jurisdiction over this appeal. Because we conclude that we have jurisdiction under 28 U.S.C. § 1291, we need not address this issue.

indictment." *Daniels*, 252 F.3d at 414 (internal citations omitted). Stated differently, "a constructive amendment of an indictment occurs when an essential element of the offense is effectively modified during trial." *United States v. Young*, 730 F.2d 221, 224 (5th Cir. 1984). Importantly, the Fifth Circuit distinguishes constructive amendments from mere variances, which are less drastic mismatches between the evidence and the charge of the indictment. *Id.* at 223; *see also United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005) ("A variance arises when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense." (internal citations omitted)).

This distinction is important because a constructive amendment implicates a different standard of review than a variance. Where a constructive amendment is properly objected to before the district court, it is reversible *per se. United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012). On the other hand, where a defendant does not object to a constructive amendment at the district court, the Fifth Circuit reviews for plain error. *Daniels*, 252 F.3d at 414. As for a mere variance, the Fifth Circuit reviews for harmless error. *United States v. Ongaga*, 820 F.3d 152, 164 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 211 (2016).

Because it is undisputed that Appellant did not object to the alleged constructive amendment at the district court, any constructive amendment or variance would be reviewed for plain error or harmless error. In the event that the district court constructively amended the information, this Court would review for plain error, meaning error that is plain and that affects Appellant's substantial rights; even if these requirements are satisfied, this

Court has discretion to correct the forfeited error, which it should do only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). In the event that the district court committed a mere variance, this Court would review for harmless error, requiring reversal only if it prejudiced Appellant's substantial rights either by surprising him or placing him at risk of double jeopardy. *Young*, 730 F.2d at 223; *Ongaga*, 820 F.3d at 164.

Appellant argues that this Court should review the alleged constructive amendment *de novo* for two reasons. First, Appellant argues that "the underlying rationale of the contemporaneous objection and plain error rule is not furthered by applying it when there was a bench trial where the judge *sue [sic] sponte* amended the bill of information." Blue Br. at 16. This argument is without merit because the entire basis of Appellant's constructive amendment argument—the district court's statement that Appellant intended to commit a sexual act, "just not the one that everybody thought he was going to commit"—could have been greatly clarified by a proper and timely objection. As will be discussed, the district court's statement and its meaning are unclear. Had Appellant properly objected, the district court could have at least clarified its statement or at most corrected any alleged error. *See United States v. Castillo*, 430 F.3d 230, 242 (5th Cir. 2005) ("With respect to the preservation of error, this court has held that the purpose of a contemporaneous objection is to enable the district court to correct its error in a timely manner."). Second, Appellant argues for *de novo* review because "[a]ny objection by defense counsel to the District Court Judge's verdict would have been futile because at the time of the error, the District Court Judge's belief in the verdict was well formed." Blue Br. at 17. This argument too is

meritless. Because the district court's statement was unclear, it is difficult to determine exactly what the district court thought of its verdict. And again, the very purpose of this objection would have been to give the district court a timely opportunity to correct any errors underlying its verdict. In any event, Appellant cites no case applying *de novo* review to an unpreserved constructive amendment or variance objection, and the case law is to the contrary. *See Jara-Favela*, 686 F.3d at 299 (reviewing a *preserved* constructive amendment claim *de novo*).

For these reasons, a constructive amendment would require plain error review and a mere variance would require harmless error review.

## III. Analysis

Because of the district court's comment, the record does not reflect whether there was sufficient evidence to adjudicate Appellant delinquent. The information alleged that Appellant attempted to commit *a sexual act*, as defined in § 2246(2)(C) as "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *See* R. at 139–40; 18 U.S.C. § 2246(2)(C). By adjudicating Appellant delinquent because he "had an intent to commit a sexual act or actually was committing *a sexual act*, just not the [sexual act] that everybody thought he was going to commit," the district court raised doubts as to whether the adjudication was based on an attempt to commit a sexual act as defined in § 2246(2)(C) and as charged in the information.

By using the precise phrase defined by statute and charged in the information, the district court could likely have adjudicated Appellant delinquent on the basis of a sexual act with an entirely different definition.

*See* 18 U.S.C. § 2246(2)(A), (B), (D) (defining "sexual act" in ways other than penetration). If this were the case, Appellant's defense at trial would have been quite different. As the Government points out, the ultimate defense would still have been advancing an innocent explanation for the situation observed by Appellant's aunt. But the means of proving this defense would have changed depending on the precise sexual act that Appellant was accused of committing. If Appellant were charged with attempting to commit oral sex or a simple touching, the precise factual narrative at trial would have been much different than the narrative involving alleged penetration—the questions asked of the victim would have been different, the questions asked of Appellant's aunt (an eye-witness to the attempt) would have been different, and perhaps even Appellant's decision not to testify would have been different.

Supporting the Government's position, § 2246(2)(C) defines penetration in a way that contemplates a variety of sexual acts. Thus, § 2246(2)(C) could logically encompass both the sexual act upon which the district court based its adjudication of delinquency and the sexual act that formed the basis of the information, even though those ended up being two slightly different forms of penetration. Despite this possibility, the district court's comment is still too ambiguous for this Court to discern its exact meaning. It is certainly possible that the district court adjudicated Appellant delinquent on the basis of a "sexual act" that fits within the meaning of § 2246(2)(C) and yet is not what "everybody thought he was going to commit." Equally possible, though, the district court may have contemplated a "sexual act" that does not fit within this definition.

Another ambiguity in the district court's statement is its reference to the sexual act "*everybody* thought [Appellant] was going to commit." The Government argues that the district court could have meant that the prosecution and the defense all contemplated the same sexual act, but someone else (*e.g.,* Appellant's family) contemplated a different act. The Government is right—this *could* have been the district court's intended meaning. But again, the district court may have contemplated one sexual act while everybody—the prosecution, the defense, the information, Appellant's family—contemplated a different one as defined in § 2246(2)(C).

The Government's arguments do nothing more than highlight the ambiguity of the district court's statement. Because the statement is unclear, this Court cannot determine whether the district court committed error by adjudicating Appellant delinquent on the basis of insufficient evidence. Nor can this Court determine whether the district court constructively amended the information, committed a mere variance, or committed no error at all. This lack of clarity is so severe that, because the standard of review varies between constructive amendment and variance, this Court cannot even precisely determine whether plain error or harmless error review applies.

The Government also argues that constructive amendment protections may not apply in federal juvenile delinquency proceedings. As the Government points out, federal delinquency proceedings are not strictly criminal in nature—"A successful prosecution under [18 U.S.C. §§ 5031, *et. seq.*] results in a civil determination of status rather than a felony or misdemeanor conviction." *United States v. Sealed Appellant*, 123 F.3d 232, 233 (5th Cir. 1997). Extending this premise, the Government argues that "the prohibition against constructive amendments is derived from the Fifth

Amendment's guarantee of an indictment for all federal felony offenses, and the Sixth Amendment's guarantee of fair notice regarding any criminal charges. *See* [*Russell v. United States*, 369 U.S. 749, 763–64 (1962); *Stirone v. United States*, 361 U.S. 212, 215–16 (1960)]." Red Br. at 25.[5] As a result, the Government argues, Appellant was only entitled to the Fifth Amendment's Due Process protection of fundamental fairness in the context of juvenile dispositions, and not the Fifth and Sixth Amendments' greater protections concerning constructive amendments or variances. *See* Red Br. at 25–27 (quoting *United States v. Edward J.*, 224 F.3d 1216, 1221 (10th Cir. 2000) for the proposition that "the Due Process Clause has a role to play, in juvenile trial proceedings, and the standard we use to measure the extent of that role is one of fundamental fairness." (internal quotations omitted)).

At best, the answer to this question is unsettled. The Supreme Court has admonished that "[l]ittle, indeed, is to be gained by any attempt simplistically to call the juvenile court proceeding either 'civil' or 'criminal.' The Court carefully has avoided this wooden approach." *McKeiver v. Pennsylvania*, 403 U.S. 528, 545 (1971). Beyond recognizing that there is no Sixth Amendment right to a jury trial in federal delinquency proceedings, the Supreme Court and Fifth Circuit have seldom addressed the precise constitutional protections to which a juvenile is entitled or the precise scope of these protections. *See id.*; *United States v. Cuomo*, 525 F.2d 1285, 1292 (5th Cir. 1976) (holding, consistent with all other circuit courts to address the question, that there is no Sixth Amendment right to a jury trial in delinquency proceedings); *see also Fare v. Michael C.*, 442 U.S. 707, 717 n.4

---

[5] *See also United States v. Reyes*, 102 F.3d 1361, 1364 (5th Cir. 1996) (characterizing a constructive amendment as a violation of a criminal defendant's Fifth Amendment guarantee to be tried only on charges alleged in a grand jury indictment).

(1979) ("[T]his Court has not yet held that *Miranda* applies with full force to exclude evidence obtained in violation of its proscriptions from consideration in juvenile proceedings, which for certain purposes have been distinguished from formal criminal prosecutions.").

Regardless, Appellant is of course entitled to due process, which in the context of juvenile proceedings requires, at the very least, fundamental fairness. *McKeiver*, 403 U.S. at 543. Once again, without knowing precisely what "sexual act" formed the basis the district court's adjudication, it is impossible to assess the fairness of the proceedings below. On the one hand, for the reasons articulated by the Government, the district court may have been referencing the sexual act charged in the indictment. On the other hand, for the reasons articulated by Appellant, alternative explanations are equally likely and, if true, would undermine the fundamental fairness of the district court proceedings.

## CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion, including a new trial if deemed appropriate by the district court.